## 19111

Richard W. HUNT, Individually and representing all of the taxpayers of the State of South Carolina, Appellant, v. Robert E. McNAIR, Governor of the State of South Carolina, Grady L. Patterson, Jr., Treasurer of the State of South Carolina, John H. Mills, Comptroller General of the State of South Carolina, Edgar A. Brown, Chairman of the Senate Finance Committee, Robert J. Aycock, Chairman of the Ways and Means Committee of the House of Representatives, constituting the Budget and Control Board of the State of South Carolina; Daniel R. McLeod, Attorney General of the State of South Carolina, and Baptist College at Charleston, an eleemosynary corporation, Respondents.

(177 S. E. (2d) 362)

*Messrs. Bryant & Fanning,* of Orangeburg, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *C. Pinckney Roberts, Assistant Attorney General,* of Columbia, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

October 22, 1970.

*Per Curiam:*

In this action the plaintiff contests the constitutionality of the Educational Facilities Authority Act (Section 25 of Act No. 349 of the Acts of the South Carolina General Assembly for the year 1969), and prays an order enjoining the defendants from proceeding under its authority. The Court of Common Pleas for Charleston County denied the plaintiff relief; the case is before us on exceptions taken to the trial judge's order.

We are satisfied that the decree of the circuit court, together with our addenda, correctly sets forth and disposes of all issues raised by the appellant on this appeal, and the order of the circuit judge shall be reported as the directive of this court. We have eliminated several sentences not necessary to a determination of the issues. We have added to the order the paragraphs indicated in brackets.

## ORDER OF JUDGE SINGLETARY

At issue here is the constitutionality of the recently enacted Educational Facilities Authority Act which appears as Section 25 of Act No. 349 of 1969 which became effective June 4, 1969 (hereinafter referred to as the Act). This action is brought for a declaratory judgment pursuant to the provisions of Sections 10-2001, *et seq.*, seeking a holding

that the Act is unconstitutional and that certain actions taken pursuant thereto by the Defendants herein are invalid and should be enjoined.

In his Complaint the Plaintiff alleges that he is a taxpayer of the State of South Carolina and a resident of Charleston County, whose interest would be adversely affected by the Defendants who constitute the Budget and Control Board of South Carolina, and, therefore, has standing to challenge the validity of the Act and the actions of the Defendants thereunder. It is clear that his contention in this respect is correct. *Shillito v. City of Spartanburg,* 214 S. C. 11, 51 S. E. (2d) 95; 52 Am. Jur., Sec. 3, Pg. 3.

It also appears that a justiciable controversy exists.

The returns filed on behalf of the Defendants raise no issues of fact and accordingly it is entirely appropriate that the case be disposed of on the pleadings and on the exhibits which have been presented to me for my consideration.

Under the provisions of the Act the Budget and Control Board of the State of South Carolina (the State Board) acting as the Educational Facilities Authority (the Authority) is authorized to provide financing for institutions of higher learning as defined in the Act by the issuance of revenue bonds payable solely out of the revenues of the Authority derived from the particular project for which they are issued and secured by a mortgage on the project so financed. The Act further provides that revenue bonds may be issued to refund outstanding obligations issued by an institution of higher learning for the cost of a project as defined in the Act.

The Defendant, Baptist College at Charleston, an eleemosynary South Carolina corporation (the College) has petitioned the Authority seeking the preliminary approval of the Authority for the issuance of not exceeding $3,500,000 of revenue bonds pursuant to the said Act for the purpose of (a) paying off outstanding indebtedness of the Baptist College

Foundation incurred for the purpose of acquiring certain equipment and trailers utilized as a part of the College's educational plant (the payment for which the College is responsible) in the amount of approximately $275,000; (b) reimbursing in part the College's Current Fund for moneys advanced to the College's Plant Fund used to purchase school equipment and other capital improvements and for the payment of the aforesaid obligation of the Baptist College Foundation; and (c) refunding an outstanding indebtedness of the College in the amount of approximately $2,500,000 represented by the College's first mortgage serial bonds dated July 1, 1966.

The said Petition of the College proposes that the College convey approximately 400 acres of land with the facilities located thereon to the Authority which shall in turn lease the said land and facilities back to the College at a rental which will be sufficient to meet the payment of principal and interest as they become due on the proposed bonds. Such lease will further provide that the College, upon payment of the bonds, shall reacquire the said land and facilities at no cost to the College.

At its meeting held January 16th, 1970 the Authority adopted a Resolution giving preliminary approval to the financing arrangements outlined in the Petition of the College to the Authority subject to approval by the Authority of the final terms and conditions of the proposed financing and of the terms and provisions of the Lease Agreement and Trust Indenture to be used in connection with such financing.

It has been agreed that all conditions imposed by the Educational Facilities Authority Act have been or will be duly met so that squarely at issue is the constitutionality of the Act and the validity of the actions of the Defendants pursuant thereto.

Plaintiff challenges that the Act is invalid on five grounds:

1. The undertaking by the State to finance private educational facilities is not a public purpose for which the State may issue bonds;

2. The Act violates the first sentence of Section 6 of Article X which states "* * * the credit of the State shall not be pledged or loaned for the benefit of any individual, company, association or corporation * * *".

3. The proposed actions of the Authority would deprive Plaintiff of property without due process of law in violation of the provisions of Section 5 of Article I of the South Carolina Constitution inasmuch as the Authority would expend public funds for the benefit of a private corporation.

4. The Act and the proposed actions of the Authority violate the equal protection clauses of the State and Federal Constitutions inasmuch as certain privileges and immunities are afforded to "institutions of higher learning" as defined in the Act which are not available to all classes of persons generally nor available to all persons in the field of education generally.

5. The option proposed to be granted to the College to purchase land and facilities at a nominal value violates the public policy of the South Carolina Constitution in violation of Section 31, Article III and Section 5 of Article I inasmuch as it permits a donation of property of the State.

It is further contended by the Plaintiff that the Act is unconstitutional, null and void in the case of the College and other church supported institutions for the reason that the issuance·of bonds pursuant to the Act would violate Article XI, Section 9 of the South Carolina Constitution forbidding aid from the State of South Carolina to any college, etc. which is wholly or in part under the direction or control of any church or of any religious or sectarian denomination and for the further reason that said Act violates the first amendment to the United States Constitution and Article I, Section 4 of the South Carolina Constitution which prohibits the making of any law respecting an establishment of religion or prohibiting the free exercise thereof.

·I shall dispose of these questions in the order set forth above.

All legislative action should serve a public rather than a private purpose. The Act recites that in order for the people of the State to increase their commerce, welfare and prosperity and improve their health and living conditions it is essential that this and future generations of youths be given the fullest opportunity to learn and to develop their intellectual and mental capacities. The Act takes note that to meet this goal it is essential that institutions for higher learning within the State be provided with appropriate additional means to assist such youth in achieving the required level of learning and development of their intellectual and mental capacities. The true purpose of the Act is to provide a measure of assistance and an alternative method to enable institutions for higher learning in the State to provide the facilities and structures which are sorely needed to accomplish this aim to the public benefit and good of all the people of this State. This purpose is served by the issuance of revenue bonds pursuant to the Act for the purpose of refunding outstanding obligations originally incurred, as in the instant case, for purposes for which bonds can be issued. It is too late to question whether or not the promotion of secular education is a public purpose as it is universally acceptable as a proper public purpose. *Everson v. Board of Education,* 330 U. S. 1, 7, 9, 67 S. Ct. 504, 507, 508, 91 L. Ed. 711 at 719, 720; *Cochran v. Louisiana State Board of Education,* 281 U. S. 370, 374, 50 S. Ct. 335, 74 L. Ed. 913. If the general public benefit is the dominant interest served, constitutional demands are not offended, even though the aid inures to the benefit of a private institution.

[The plaintiff's argument that since the proceeds of the bonds are not to be used to construct new educational facilities, and since the proceeds will not be used to carry out any commitment made by the State which resulted in the expenditure of funds for improvement, no public purpose will be served, is not sound. Refunding and refinancing is involved, and even though no additional facilities will be brought into being by reason of the refunding and refinancing, a public

purpose will nevertheless be served. The fact that the facilities have heretofore been constructed is not material, or certainly not controlling.

The ability of the college to provide education to its students is inseparable from its fiscal welfare. Construction of new facilities serves the public purpose of educating students. Keeping the financial structure of the institution sound serves the same or a similar purpose. The legislature recognized this by empowering the Authority to assist institutions with refinancing projects, including the refunding of obligations issued by the institution.]

In regard to the second attack on the constitutionality of the Act, based on the contention that the credit of the State would be pledged or loaned for the benefit of a corporation in violation of Section 6 of Article X, the case of *Feldman v. The City of Charleston,* 23 S. C. 57, has been cited to me as well as the decision in the case of *Bolton v. Wharton,* 163 S. C. 242, 161 S. E. 454.

In the *Feldman* case, the City of Charleston issued bonds to lend their proceeds to those whose houses had been destroyed in the great conflagration of the eighteen sixties. The bonds were payable from *ad valorem* taxes levied upon the taxable property in Charleston. However, the City of Charleston had procured mortgages from those to whom it had loaned money covering the residences built with the proceeds of the bonds. From the facts in this case, it appears that for many years the City of Charleston recognized the validity of the bonds and made payments on account of the coupons, but when it went into default, it raised for the first time the question that the power of the legislature to authorize bonds and the actions of the City officials in disposing of them violated the constitutional provisions requiring that the purpose for which the proceeds of public bonds be expended be public in nature. In holding that the Act of the legislature and the subsequent action of the City of Charleston in issuing the bonds were unconstitutional, this Court stated:

"However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental. The incidental advantage to the public, or to the State, which results from the promotion of private interests, and the prosperity of private enterprises or business, does not justify their aid by the use of public money raised by taxation *or for which taxation may become necessary.*" (Emphasis added.)

Notwithstanding, that as a result of the devastation resulting from the war, much of Charleston lay in waste, the Court held that the basic purpose of the loan was private rather than public, and for that reason, the bonds were, insofar as the City of Charleston was concerned, null and void. It is significant, however, that the Court held that it was not only the right, but the duty of the City Council to collect from those who had borrowed the proceeds of the bonds the sums due by them and to apply the same to the payment of the fire loan bonds. Hence, the basic holding in this case, denied the validity of the bonds simply because they were payable from the proceeds of taxation.

In the *Bolton* case, the suit was brought upon a note purported to be issued by the City of Union as a tax anticipation note, but in reality simply a promissory note, issued to obtain funds with which to underwrite stock in a proposed local silk manufacturing corporation from which Union was expected to incur benefits resulting from the increased taxable values, from advancement of property values of property in general and from increased impetus to the life of the community. The majority of the Court held that because there was an absence of both constitutional and statutory authority to issue the notes they were null and void.

The following is taken from the decision of Circuit Judge Sease and whose opinion was affirmed *in toto* by the Supreme Court (161 S. E. 454, 457) :

"The power given to the city council to issue bonds, so as to bind not only all the taxpayers of the city, but their chil-

dren as well, is a very high confidence and trust, and can be properly exercised for no other purpose than 'for the public use of the corporation,' no matter how great the temptation may be. * * * We cannot suppose that it was intended to give the city council, as such, the right to go into commerce, to buy for the purpose of selling goods, or to enter into any private business or speculation whatever. *Mauldin v. City Council of Greenville* (1890), 33 S. C. 1, 24, 11 S. E. 434, 438, 8 L. R. A. 291. The language of Mr. Justice Marion in *Haesloop v. City Council of Charleston, supra,* 123 S. C. [272] page 286, 115 S. E. 596, 601, it seems decisive that these obligations were not issued to realize funds to be put to a purpose 'essentially public' in their nature: 'In ascertaining what is a public purpose within the power to tax, such benefits from a proposed expenditure as will accrue from increased taxable values, from enhancement of property values generally, and from increased impetus to the commercial life of the community will ordinarily be considered of too incidental or secondary a character to justify an outlay of public funds.' Applying these rules of law to the instant obligations, it seems beyond cavil that the notes were not issued for a valid public purpose."

Significantly again however, the only method by which the City of Union might discharge the obligation sued on in the *Bolton* case was through the levy of taxes.

The Act here requires that the bonds to be issued be paid solely from the revenues to be paid by the participating institution for higher education, as defined in the Act, and it specifically provides that all bonds issued under the Act shall contain on the face thereof a statement to the effect that neither the State of South Carolina nor the Authority shall be obligated to pay the same or the interest thereon except from revenues of the project or the portion thereof for which they are issued and that neither the faith and credit nor the taxing power in South Carolina or of any political subdivision thereof is pledged to the payment of the principal of or

the interest on such bond. The Act further provides that the issuance of revenue bonds thereunder shall not directly or indirectly or contingently obligate the State or any political subdivision thereof to levy or to pledge any form of taxation whatever therefor or to make any appropriation for their payment. Clearly, therefore, the only funds pledged for the payment of the bonds are lease rental payments to be made by the Baptist College at Charleston. Since it is conceded that the only remedies of the bondholders in the event of default is to pursue the rights of the Authority to collect from its lessee, and if need be, to foreclose the trust indenture and have the property sold, the State's credit can never be adversely affected. This situation is in reality akin to the rights of those who held the City of Charleston Fire Loan Bonds to proceed against the persons to whom the City had loaned the proceeds of those bonds. Accordingly, the result of the *Feldman* case clearly supports the validity of the Act which for all intents and purposes is analogous to the South Carolina Industrial Revenue Bond Act, the validity of which was upheld in *Elliott v. McNair* (1967), 250 S. C. 75, 156 S. E. (2d) 421.

It is contended that the Act violates the due process clause of the State Constitution inasmuch as it permits the expenditure of public moneys for the benefit of a private corporation. I point out that under the Act no public moneys as such can be expended to such institutions for higher education in the construction, financing and refinancing of projects as such term is defined in the Act. The entire cost thereof is financed through the sale of bonds which are payable by the participating institution for higher education. No public money is involved.

It is next contended that the Defendant, the Baptist College at Charleston and the other institutions for higher education which will utilize the Act, are granted special privileges in violation of the privileges and immunity section of the Constitution. It is argued that the

benefits of the Act are not available to all classes or persons generally nor available to all persons in the field of education generally. It is argued that such persons, both in the field of education and without, who do not qualify under the Act, must invariably pay a higher rate of interest because of the fact that the interest on bonds issued by the Act is not subject to income taxation. Plaintiff overlooks the basic object of the Act in setting forth this argument. It is not the purpose of the Act to afford any special privileges. It is, as stated above, the purpose of the Act to assist institutions for higher learning in the construction, financing and refinancing of their projects as defined in the Act, which in turn results in the benefit to the people of the State in the increase of their commerce, welfare and prosperity and the improvement of their health and living conditions.

[In *Elliott v. McNair, supra,* we dealt with this same question and said:

"We have held that the General Assembly has the right to make reasonable classifications of persons and property for public purposes. It is elementary that if the classification bears a reasonable relation to the legislative purpose sought to be effected, and if the constituents of each class are all treated alike under similar circumstances and conditions, there is no infringement upon the equal protection clause of the Constitution. It is sufficient if the Act applies equally to all members of the class provided the classification is not purely arbitrary but rests upon some reasonable basis. *Duke Power Co. v. Bell,* 156 S. C. 299, 152 S. E. 865. The fact that a private corporation, coming within the provisions of the Act, may borrow money at a lesser rate of interest than others who do not qualify under the Act does not afford any special privilege to such private corporation because the provisions of the said Act apply equally to all corporations within the class provided for in said Act."]

It is next contended that the option proposed to be granted to the Defendant, Baptist College at Charleston, to purchase land and facilities at a nominal value

violates the public policy of the State of South Carolina and is in violation of Section 31 of Article III and Section 5 of Article I of the South Carolina Constitution inasmuch as it permits the donation of such property. The former clause provides that lands belonging to the State shall never be donated to private corporations and that such lands shall not be sold to corporations "for a less price than that for which it can be sold to individuals." The Act in paragraph H actually requires the reconveyance to the participating institution for higher education at such time that the principal of and interest on the bonds of the Authority issued to finance the cost of a particular project or projects, including any revenue refunding bonds issued to refund and refinance such revenue bonds, have been fully paid and retired, or when adequate provision has been made to fully pay and retire the same, and all other conditions of the Trust Indenture authorized in its name have been satisfied, and the lien of such Trust Indenture has been released in accordance with the provisions thereof. When such reconveyance shall take place, it will be a part of the overall contract, and of the consideration for the contract existing *ab initio,* and not a contract arising subsequent to the issuance of the bonds. Here again the situation is analogous to the option to purchase the industrial revenue project granted the industry by the South Carolina Industrial Revenue Bond Act, the validity of which provision was upheld in *Elliott v. McNair, supra.*

The major thrust of the Plaintiff's attack is the contention that the issuance of the Bonds pursuant to the Act would violate Article XI, Section 9 of the Constitution, which reads as follows:

"The property or credit of the State of South Carolina, or of any county, city, town, township, school district, or other subdivision of the said State, or any public money, from whatever source derived, shall not, by gift, donation, loan, contract, appropriation, or otherwise, be used, directly or indirectly, in aid or maintenance of any college, school,

hospital, orphan house, or other institution, society or organization of whatever kind, which is wholly or in part under the direction or control of any church or of any religious or sectarian denomination, society or organization."

It has been made to appear to me that the Baptist College at Charleston is a corporation organized and existing under the laws of the State of South Carolina and in its Charter, the purpose of the said corporation, among other things, is to establish, equip, maintain, conduct and operate a Baptist Liberal Arts College for educational purposes. Further, all the powers of the corporation are lodged in a Board of Trustees consisting of 25 members, all of whom are elected by the South Carolina Baptist Convention. It has been further shown that approximately 60% of the enrollment of the college students of the Baptist College are of the Baptist faith. It has also been shown that this is about the ratio of Baptists to non-Baptists in this area of the State. Under any interpretation of this provision of our Constitution, however, there is no question but that the operation of the Baptist College at Charleston is at least in part under the direction or control of the South Carolina Baptist Convention. Thus, the question is presented whether or not the proposed actions of the Defendants would constitute a loan or gift of the property or credit of the State of South Carolina in contravention of the Constitution. I do not find that any property of the State of South Carolina, as such, is involved inasmuch as the State will acquire (at no cost to the State) a title subject to certain conditions, one of which is an option in favor of the Baptist College to reacquire the property so conveyed to the State; and thus the question is limited to whether or not the credit of the State of South Carolina has been given, loaned or contracted for, appropriated or otherwise used directly or indirectly, in aid of the Baptist College. In view of my holding above, that the credit of the State is in no way involved in the proposed actions of the Defendants, I find that the credit of the State can in no way be considered as aiding in any way the Baptist College at Charleston.

[The Plaintiff contends that the State has enacted legislation respecting the establishment of religion and prohibiting the free exercise thereof in contravention of Section 4 of Article I of the Constitution of South Carolina. Having held that neither the credit of the State nor the property of the State is involved, it follows that this constitutional provision is not violated. There is no conflict between the preservation of religious freedom and the preservation of higher education under the Educational Facilities Authority Act. Plaintiff's claim that the Act and the proposed actions of the Defendants as relates to academic facilities impair his rights under the Establishment Clause is without merit.]

For the reasons above set forth, the relief sought by the Plaintiff must be denied, as the holding of this Court is that the Act is a valid exercise of the legislative power of the General Assembly of South Carolina, and the Defendants constituting the Budget and Control Board and the Defendant Baptist College may proceed with the proposed issuance of revenue bonds pursuant to the Act.

And it is so ordered.

Affirmed.