(No. 45170.—

RUTH CECRLE, Appellant, v. ILLINOIS EDUCATION-
AL FACILITIES AUTHORITY, Appellee.

*Opinion filed October 2, 1972.*

LEONARD M. RING, of Chicago, for appellant.

DON H. REUBEN, LAWRENCE GUNNELS and JAMES C. MUNSON, all of Chicago (KIRKLAND & ELLIS, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Cook County sustained a motion to dismiss an action in which the plaintiff, Ruth Cecrle, sought to enjoin the defendant, Illinois Educational Facilities Authority, from implementing an agreement with Lewis College which was entered into pursuant to the terms of the Illinois Educational Facilities Authority Act. The plaintiff appealed, and the appeal was transferred to this court. Ill. S. Ct. R. 302(b), 50 Ill. 2d R. 302(b).

The Illinois Educational Facilities Authority Act (Ill.Rev.Stat. 1969, ch. 144, par. 1301 et seq.) establishes the Illinois Educational Facilities Authority, composed of seven members appointed by the Governor, who serve without compensation. The authority is empowered to issue revenue bonds and to use the proceeds from their sale to acquire, construct, enlarge, remodel, renovate, improve, furnish, or equip educational facilities for lease to private institutions of higher education. The statute follows the pattern of State authorized revenue bond financing of buildings for private colleges and universities that has been employed in several States. See *Opinion of the Justices*

*(1968), 354 Mass. 779, 236 N.E.2d 523; Vermont Educational Buildings Financing Agency v. Mann (1968), 127 Vt. 262, 247 A.2d 68, appeal dismissed, 396 U.S. 801, 24 L.Ed.2d 58, 90 S.Ct. 9; Nohrr v. Brevard County Educational Facilities Authority (Fla. 1971), 247 So. 2d 304; Clayton v. Kervick (1970), 56 N.J. 523, 267 A.2d 503, vacated, 403 U.S. 602, 29 L.Ed.2d 854, 91 S.Ct. 2274, aff'd on remand (1971), 59 N.J. 583, 285 A.2d 11; Hunt v. McNair (1970), 255 S.C. 71, 177 S.E.2d 362, vacated (1971), 403 U.S. 602, 29 L.Ed.2d 854, 91 S.Ct. 2276, aff'd on remand (1972), —— S.C. ——, 187 S.E.2d 645.*

The statute defines a "private institution of higher education" as a not-for-profit educational institution which is authorized by law to provide a program of education beyond the high school level, is not owned or controlled by the State or any of its subdivisions or agencies and "does not discriminate in the admission of students on the basis of race, color or creed." The institution must admit as regular students only those with a high school degree, or its equivalent, and must provide a program for which it awards a bachelor's degree, a 2-year program acceptable for full credit toward such a degree, or a 2-year program for certain semiprofessional occupations. The institution must be accredited or meet equivalent requirements under the terms of the Act. Ill.Rev.Stat. 1971, ch. 144, par. 1303.07.

The kinds of facilities which may be financed by the Authority are listed in section 3.06 of the Act; they include a wide variety, for both academic and extracurricular activities, but they "shall not include any property used or to be used for sectarian instruction or study or as a place for devotional activities or religious worship nor any property which is used or to be used primarily in connection with any part of the program of a school or department of divinity for any religious denomination." They may not include a facility which is to be used

primarily for training of ministers, priests, rabbis or other professional persons in the field of religion. Ill.Rev.Stat. 1969, ch. 144, pars. 1303.06, 1303.02.

The Authority is to determine the location and character of a project it approves, and to issue revenue bonds to finance its cost. The necessary land is to be acquired, and the cost, if any, is to be paid for "solely from funds provided under the authority of this Act." The bonds are payable solely from the income derived from the project, and they do not constitute a debt of the State. When the facility is constructed it is leased to the institution. The Authority fixes the rents and charges for the use of the facility, which must be sufficient to meet interest and principal payments on the bonds as well as all costs of administering and maintaining the project. Section 6 provides: "All expenses incurred in carrying out the provisions of this Act shall be payable solely from funds provided under the authority of this Act and no liability shall be incurred by the Authority beyond the extent to which moneys shall have been provided under this Act." The maximum maturity of the bonds is 40 years, and after they are redeemed the Authority is required to convey the facility to the educational institution. Ill.Rev.Stat. 1969, ch. 144, pars. 1305-1309.

On August 6, 1971, the Authority entered into an agreement with Lewis College, located in Lockport, Illinois, for the financing and construction of a permanent aviation maintenance instruction facility on the Lewis College campus. Lewis College is a private Roman Catholic college under the direction of the Christian Brothers. It has received from the United States Department of Health, Education and Welfare a grant of $286,041 for the construction of the facility, and it applied to the Authority for the issuance of revenue bonds under the statute in the sum of $930,000, to cover the remainder of the total cost. It has executed a quit-claim deed conveying title to the land upon which the facility is to be built to the

Authority. The agreement provides that the Authority will issue revenue bonds in the aggregate principal amount of $930,000, payable over a period of 29 years, to finance the construction and equipping of the facility. The Authority is then to contract for and supervise the construction of the facility. Thereafter, the Authority will lease the facility to Lewis College for an annual rental sufficient to comply with the requirements of the statute. When the bonds are fully redeemed the Authority is to convey the facility to Lewis College.

The Act is challenged upon the ground that it violates section 3 of article X of the Illinois constitution of 1970 (which is identical to section 3 of article VIII of the constitution of 1870), as well as the provisions of the first amendment to the constitution of the United States which are made applicable to the States through the fourteenth amendment.

Section 3 of article X of the Illinois constitution provides:

"Neither the General Assembly nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation or pay from any public fund whatever, anything in aid of any church or sectarian purpose, or to help support or sustain any school, academy, seminary, college, university, or other literary or scientific institution, controlled by any church or sectarian denomination whatever; nor shall any grant or donation of land, money, or other personal property ever be made by the State, or any such public corporation, to any church, or for any sectarian purpose."

The pertinent portion of the first amendment of the Federal constitution is as follows:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; \*\*\*."

From the preceding summary of the provisions of the statute it is clear that none of our own decisions have dealt with anything that very closely resembles the kind of problem that is involved here. This statute deals only with institutions of higher education; it relates only to assist-

ance in the construction and maintenance of buildings to be used for secular purposes; it involves no direct grant of State funds, and with one exception, to be noted hereafter, it involves no loan of public funds. The building that is to be constructed will ultimately be paid for completely by the private institution for which it is constructed. What makes the program attractive to private institutions of higher education is that this method of financing reduces the total cost of construction because interest upon the revenue bonds issued under the Act will be exempt from Federal income taxation.

The plaintiff argues that "the State of Illinois, by making its privilege to issue 'tax exempt' bonds available for use and benefit of private, sectarian institutions of higher learning, is making a very substantial grant or donation to such institutions." This form of aid, not by a grant or loan of money or property, but by making available a tax-exempt status with respect to a tax imposed by another government, was unknown when section 3 of article X was originally included in our constitution, and the first question to be determined is whether it is prohibited by that section.

For more than a century our successive Illinois constitutions have expressly authorized the General Assembly to exempt from taxation property used exclusively "for school, religious, *** and charitable purposes." (Ill. Const. of 1848, art. IX, sec. 3; Ill. Const. of 1870, art. IX, sec. 3; Ill. Const. of 1970, art. IX, sec. 6.) The same constitution which contains section 3 of article X, also specifically authorizes the legislature to exempt from taxation all property used for school or religious purposes. It is unmistakably clear that section 3 of article X was not intended to prohibit the General Assembly from directly establishing a tax-exempt status for religiously affiliated schools. And in our opinion it would be inconsistent to read into section 3 of article X a prohibition against the kind of indirect tax exemption that is involved in this case.

So far as the constitution of the United States is

concerned, outright exemption from taxation is not prohibited by the first amendment. In *Walz v. Tax Commission (1970), 397 U.S. 664, 25 L.Ed.2d 697, 90 S.Ct. 1409,* the Supreme Court sustained the validity, under the Federal constitution, of New York's grant of an exemption from property taxes to religious organizations. And in *Tilton v. Richardson (1971), 403 U.S. 672, 29 L.Ed.2d 790, 91 S.Ct. 2091,* the Supreme Court sustained a Federal program under which institutions of higher education, including religiously affiliated institutions, were given direct grants for the construction of buildings and facilities for secular purposes. The Court has held that in order to be consistent with the Establishment Clause a program of aid to religiously affiliated schools must meet three separate standards. It must have a secular purpose, a primary effect that neither advances nor inhibits religion, and it must not give rise to an "excessive entanglement" between the government and religion. *Lemon v. Kurtzman (1971), 403 U.S. 602, 612-613, 29 L.Ed.2d 745, 755, 91 S.Ct. 2105.*

In the case before us it is clear that the purpose of the General Assembly was to maintain and improve the quality of higher education in the State, and thereby to enhance the welfare of the State. We have been given no cause to question this purpose.

In determining that the primary effect of the Federal statute neither advanced nor inhibited religion, the Supreme Court emphasized the fact that the facility was itself religiously neutral, and that it was to be used by students attending an institution of higher learning who are less impressionable than those attending church-related primary and secondary schools. (See also, Freund, Public Aid to Parochial Schools, 82 Harv. L. Rev. 1680, 1691.) These factors are also present in the case before us.

Before the *Lemon* and *Tilton* cases were decided, the highest courts of New Jersey and South Carolina had sustained the validity of legislation authorizing revenue

bond financing for private educational institutions, both secular and sectarian. (*Clayton v. Kervick (1970), 56 N.J. 523, 267 A.2d 503; Hunt v. McNair (1970), 255 S.C. 71, 177 S.E.2d 362.*) These cases were remanded by the Supreme Court of the United States to the respective State courts for further consideration in the light of the decisions in *Lemon, Tilton* and other cases (403 U.S. 945, 29 L.Ed.2d 854, 91 S.Ct. 2274, 2276). The purpose of the remand was apparently to give the State courts an opportunity to consider whether or not their statutes involved "excessive entanglement" of the State in the affairs of religious institutions. The validity of the statutory schemes was again affirmed by the New Jersey and South Carolina courts. 285 A.2d 11; 187 S.E.2d 645.

We are of the opinion that the basic provisions of the present statute do not involve "excessive entanglement." Such supervision as is involved in this statute apparently relates to the possible violation of the statutory provision which prohibits the use of the facility in question for religious purposes. The likelihood of a violation of that provision of the statute seems remote, for the institution would have little to gain but much to lose by failing to comply with the statute. The degree of supervision required would be minimal, and does not operate to invalidate the main scheme of the statute.

In *Tilton* the Supreme Court held that the Federal program would have violated the Establishment Clause if the facility was conveyed to a religiously affiliated institution after 20 years without restrictions as to its use. The Act before us specifies that funds raised under it may not be used for the acquisition of any property "used or to be used" for sectarian instruction or activities (Ill.Rev.Stat. 1969, ch. 144, pars. 1303.2, 1303.6), and we hold that this language requires the institution to refrain from using the facility for any sectarian purpose so long as it has any substantial value. This interpretation effectuates the purpose of the General Assembly and avoids an interpretation

which would render the Act unconstitutional. See *Clayton v. Kervick (1972), 59 N.J. 583, 285 A.2d 11, 20.*

We are of the opinion, however, that the provision of section 17 of the Act (Ill.Rev.Stat. 1969, ch. 144, par. 1317), which authorizes "[c]ounties, cities, villages, incorporated towns and other municipal corporations, political subdivisions and public bodies and public officers of any thereof" to "legally invest any sinking funds, moneys or other funds belonging to them or within their control in any bonds issued pursuant to this Act," cannot be sustained. That provision authorizes governmental bodies and public officers to loan public money to finance the construction of a building for a religious educational institution, and in our opinion it violates section 3 of article X of the constitution of Illinois. It eliminates the "one-time" aspect relied upon to sustain the grant in the *Tilton* case. The potential for entanglement in a long range relationship of debtor and creditor is great, for in the event of default the bondholders are authorized to apply for the appointment of a receiver to operate the facility. This defect does not invalidate the entire statute, for the provision authorizing the investment of public funds in the revenue bonds issued by the Authority is clearly severable. Ill.Rev.Stat. 1969, ch. 144, par. 1323.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*