**Shirley B. WESSINGER, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY, Defendant.**

**Harold W. WESSINGER, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY, Defendant.**

**Civ. A. Nos. 76–1372, 77–2407.**

United States District Court, D. South Carolina, Columbia Division.

Feb. 6, 1979.

---

**3.** See footnote 2, at page 928, *supra*.

Ronald L. Motley, of Blatt, Fales, Bedingfield, Loadholt, Poole, Motley & Richardson, Barnwell, S. C., for plaintiff in each action and M. M. Weinberg, Jr., Weinberg, Bryan, Warner & Brown, Sumter, S. C., for plaintiff in No. 76–1372.

Robert J. Thomas and John Gregg McMaster, of Tompkins, McMaster & Thomas, Columbia, S. C., for defendant in each action.

HEMPHILL, District Judge.

This matter comes before the court for decision, in the form of defendant's Motion In Limine. Said motion contains five points, three of which have already been resolved in a hearing held January 23, 1979. The remaining points, points two and five, are the subject of this Order.

This is a diversity action instituted August 2, 1976 as the result of a train—automobile collision that occurred on October 10, 1974, at about 11:10 p. m. at a railroad crossing near the city limits of Lexington, South Carolina. By Order issued on January 5, 1978, Harold W. Wessinger's claim for personal injuries received as a result of the collision was joined to that of his wife's, Shirley B. Wessinger, derivative claim for loss of consortium. The matter now proceeds as one, and as both parties have submitted briefs, and made oral argument in the January hearing, the matter now commands this court's decision.

Point five of defendant's motion in limine calls upon this court to reject "the application of Section 58–17–1440, South Carolina Code (1976), sometimes referred to as the 'railroad crossing' statute on the ground that such statute is unconstitutional in that it denies the defendant equal protection of the laws" under Article 1, Section 3, of the South Carolina Constitution and the Fourteenth Amendment of the United States Constitution. The section states:

Penalty and damages for injury at crossing not having required signals.

If a person is injured in his person or property by collision with the engine or any car of a railroad corporation at a crossing and it appears that the corporation neglected to give the signals required by the General Railroad Law and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision or to a fine recoverable by indictment, unless it is

shown that in addition to a mere want of ordinary care the person injured or the person having charge of his person or property was at the time of the collision guilty of gross or wilful negligence or was acting in violation of the law and that such gross or willful negligence or unlawful act contributed to the injury.

It appears that the original version of Section 58–17–1440 was enacted in 1882, and was the outgrowth of the necessity for legislation to protect the traveling public at highway crossings. The " 'Legislature evidently had in mind that injury to person or property was very likely to occur at a railroad crossing unless proper warning of the approach of trains was given to travelers, and intended by the statute to prevent such injury by requiring the railroad to give certain definitely described signals.' " *Ford v. Atlantic Coast Line R. Co.,* 169 S.C. 41, 168 S.E. 143, 172 (1937), *aff'd,* 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed. 457 (1933). Thus it was required that all trains approaching a crossing sound a whistle or 30 pound bell at least 500 yards before it reached the crossing and continue to sound the bell or whistle until the engine traversed the crossing. Section 58–15–910, South Carolina Code (1976). Plaintiffs assert that the statutory signal was not given and that this failure to signal, contributed to the injury, thus bringing into effect Section 58–17–1440.

■ It is the railroad's contention that this statute imposes an unconstitutional burden on its exercise of the defense of contributory negligence not imposed on others who may have violated a safety statute, where the violation allegedly contributed to the claimant's cause of action. Thus, it says that a railroad which fails, in violation of the statute, to give the statutory signals in approaching a crossing, may not defend against a claim arising out of a collision at such crossing by a defense of simple contributory negligence, but only by a defense of gross contributory negligence on plaintiff's part. The railroad continues by pointing out that in the case of a highway accident arising out of a violation of a highway safety statute by an operator of a car or truck, the claim of plaintiff may be defeated by proof of simple contributory negligence if the jury concludes that the statutory violation was not wilful. This difference in treatment between violations of safety statutes by railroads and others traveling upon a public highway, is, plaintiffs argue, within the General Assembly's right to make reasonable classifications of persons and property for public purposes and they cite in support the decision of *Ford v. Atlantic Coast Line R. Co.,* 169 S.C. 41, 168 S.E. 143 (1932), *aff'd,* 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed. 457 (1933).

*Ford* was decided by a court sitting almost fifty years ago. Since that time, it is important to note that a great change in highway dangers has occurred. As the court was sitting fifty years ago, automobile travel was still in its infancy. Relative to the automobiles of today, *autos of today,* autos of the 1920s and 1930s made poor comparisons to their swifter and more powerful locomotive counterparts, plying America's rail system. As America's road system increased in mileage and quality, so did the automobile. Advanced automotive technology spawned increased speeds and made interstate travel a practical and viable proposition. With this extension came the development and expansion of the trucking industry. The railroads who had up to this time enjoyed a position as the sole long distance land carriers, were now faced with stiff competition from these more mobile and efficient units. Today trucking plays an important part in the nation's economy, having joined the ranks of major carriers along with, and in some cases surpassing, the railroads. Large tractor-trailer rigs carrying explosive materials, such as natural gas, present a very real and dangerous hazard on today's crowded highways. Not only trucks present hazards, the modern automobile capable of high speeds reflects an instrument of great danger, and potentially great injury. In light of the above, the court is mindful that every statute and its constitutional validity must be resolved not by conditions as they existed at the time the statute was enacted, but by conditions as they exist at the time the statute's

constitutional validity is put in issue.[1] That was cogently declared in *Georgia Southern and Florida Ry. v. Seven-Up Bottling Co.*, 175 So.2d 39, 40 (Fla., 1965), an authority recently approved by the Supreme Court of South Carolina.[2] In approving *Georgia Southern*, the South Carolina Supreme Court in effect held that under modern conditions railroads were to be placed in the same classifications as all users of the highways with claims arising out of highway accidents resulting from violations of highway safety statutes, and that the equal protection clause would not permit the railroads to be subjected to a different or harsher treatment. The Court in *Marley v. Kirby*, 245 S.E.2d 604, 605 (S.C., 1978) states:

> The constitutional guarantee of equal protection of the laws requires that all persons be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. *Thompson v. S. C. Commission on Alcohol & Drug Abuse*, 267 S.C. 463, 229 S.E.2d 718 (1976); 16 Am.Jur.2d, Constitutional Law § 488. While the General Assembly has the right to make reasonable classifications of persons and property for public purpose, *Hunt v. McNair*, 255 S.C. 71, 177 S.E.2d 362 (1970), the classification must not be purely arbitrary and must rest upon some reasonable basis. *Duke Power Company v. Bell*, 156 S.C. 299, 152 S.E. 865 (1930); *American Trust Co., Inc. v. S. C. State Board of Bank Control*, 381 F.Supp. 313 (D.C.S.C.1974); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

This, however, is exactly what Section 58–17–1440 does. It denies to the railroad the opportunity to defeat a claim of damages arising out of a crossing accident where it is asserted that the railroad failed to give the statutory signal, by proof of contributory negligence, but requires to defend in such cases that contributory wilfulness be shown. This is not the rule when highway safety statutes are violated by the operators of trucks or cars. In light of the South Carolina Supreme Court's ruling in *Marley*, it seems clear that any difference in classification as to both liabilities and defenses between railroads and others, such as users of the highways, can no longer withstand constitutional challenge under the equal protection clause.[3]

In summary, whatever the rule may have been 50 years ago when *Ford* was decided, the day is long passed for treating violations of safety statutes by a railroad any differently from violations by a trucker or automobile driver, and as such, Section 58–17–1440 is invalid under the equal protection clause.

■ Defendant's second point concerns the admissibility of certain expert testimony by plaintiff's experts. The experts have testified by way of deposition that the railroad crossing at which Harold Wessinger was struck was dangerous and should have been protected by an active protection device. Defendant contends such testimony should be excluded, and in support, proposes several arguments, of which the first in effect states that it owes a duty of safety

1. *Nashville Chattanooga & St. Louis Railways v. Walters*, 294 U.S. 405, 415, 55 S.Ct. 486; 79 L.Ed. 949 (1934); *Gallagher v. Evans*, 536 F.2d 899 (10th Cir. 1976).

2. *Marley v. Kirby*, 245 S.E.2d 604, 606 (S.C. 1978).

3. The court in *Marley*, which struck down the automobile comparative negligence statute, Section 15–1–300 (1976), states:
> We recognize the validity of comparative negligence statutes of general application. Such statutes violate neither the due process nor equal protection clause and are enacted pursuant to the police power of a state. Am. Jur.2d, New Topic Service, Comparative Negligence, § 4. However, a comparative negligence statute applying only to a limited class of defendants is unconstitutional. The Florida Supreme Court has struck down a comparative negligence statute applying only to railroads. *Georgia Southern & Florida Ry. Co. v. Seven-Up Bottling Company*, 175 So.2d 39 (Fla.1965).
> The limitation of the operation of the South Carolina statute to motor vehicle accidents renders the provision constitutionally defective. We cannot perceive the rational justification for singling out persons injured in automobile accidents as different from all others injured in negligent torts.

only to fifty (50%) percent of the travelling public, and seems the most significant. Needless to say if this was the case, it would in effect change the entire character of negligence law.

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances." *McClure v. Price,* 300 F.2d 538 (4th Cir. 1962) (applying South Carolina law.) As pointed out in the opposing brief, by following defendant's reasoning, it would only need to protect the most skilled drivers and sacrifice the remainder, who because of age, infirmity, long periods of driving, or some other reason, cannot react as quickly as the other half of the population. By analogy, the manufacturer of a dangerous product would not be negligent if it placed on the product a warning that would be adequate for only half of the consumers. Under South Carolina law as espoused in *Mickle v. Blackmon,* 252 S.C. 202, 166 S.E.2d 173 (1969); *Gardner v. Q.H.S., Inc.,* 448 F.2d 238 (4th Cir. 1971) (apply South Carolina law of negligence), manufacturers must anticipate all risks that are reasonably foreseeable from the use of its product. Certainly, the consequences of a collision with a train are severe and as such railroads should not be exempt from the requirements of reasonable foreseeability and reasonable care. As was stated in *Robison v. Atlantic Coast Line R. Co.,* 179 S.C. 493, 184 S.E. 96, 101 (1936), the duty of care "must be commensurate with the risk and danger involved."

Having considered all defendant's arguments, the court feels that point two should be denied. In denying this point the court feels that many of defendant's arguments are best left for trial, where the matter can be pursued on cross examination.

In summary, defendant's motion objecting to the application of South Carolina Code Section 58–17–1440 (1976) on the grounds that it violates the Equal Protection Clause, is sustained. Defendant's

second motion objecting to the admissibility of testimony by plaintiff's experts is denied.

AND IT IS SO ORDERED.