66 F.3d 315
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John L. BOWMAN, individually and as executor of the estate
of John W. Bowman, Plaintiff-Appellant,
v.
NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellee,
and
The COUNTY of York, South Carolina; City of Rock Hill; The
South Carolina Department of Highways and Public
Transportation, Defendants.
 No. 94-1204.
 United States Court of Appeals, Fourth Circuit.
 Sept. 15, 1995.
 
 Sharon McCain Rickborn (argued), Columbia, SC, for appellant.
 Henry Dargan McMaster (argued), Tompkins & Mcmaster, Columbia, SC, for appellee. With him on brief, Frank Barnwell McMaster.
 Before ERVIN, Chief Judge, and MURNAGHAN and NIEMEYER, Circuit Judges.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Plaintiff John L. Bowman ("Bowman"), the father of decedent John W. Bowman ("John"), appeals from the jury's verdict in favor of defendant Norfolk Southern Railway Company ("NSR") in this wrongful death and negligence action. Specifically, Bowman challenges the district court's refusal to instruct the jury on a South Carolina statute limiting the defense of contributory negligence where a railroad has failed to comply with certain safety standards. In addition, Bowman contests the lower court's grant of summary judgment in favor of NSR on his claim that the train which collided with his son's vehicle was travelling at an excessive speed. Bowman also disputes the court's denial of his motion for a new trial based on alleged discovery abuse by NSR and the court's evidentiary ruling allowing a South Carolina state official to testify at trial. Finding no error, we affirm the district court's judgment entering the jury's verdict in favor of NSR.
 
 I.
 
 2
 At 7:03 a.m. on May 22, 1990, John W. Bowman, then twenty-two years old, was driving a truck across the Robertson Road railroad crossing in the city of Rock Hill, South Carolina, when he collided with an NSR train in route from Columbia, South Carolina. At the time of the accident, two chemical plants, ThermalKem and MTM, were located near the crossing. John had been employed at MTM for approximately four months. No stop signs had been erected at the crossing, nor were there any pavement markings, but crossbucks were in place. A safety engineer at ThermalKem had notified NSR about an earlier 1988 accident at the Robertson Road crossing.
 
 
 3
 According to persons who witnessed the accident, John slowed his truck gradually as he approached the crossing. After coming to virtually a complete stop, he began to creep forward in a stop-and-go motion. Engineer Richard Whitaker put the train, which was proceeding between 45 and 50 miles per hour at the time, into full emergency braking approximately three railroad car lengths from the crossing. He was, however, unable to prevent a collision with the truck. The accident left John comatose for over two years, until he died of related complications on December 10, 1992.
 
 
 4
 On October 29, 1991, while John remained in a coma, Bowman filed this action on behalf of his son in the United States District Court for the District of South Carolina. The complaint alleged that various acts of negligence committed by NSR caused the accident that ultimately resulted in John's death. On September 9, 1993, ten months after John's death, the district court issued a Memorandum Opinion and Order disposing of several matters. The court dismissed Bowman's negligent entrustment claim, which is not at issue on this appeal. The court also entered summary judgment against Bowman's state law claim of excessive speed, ruling that federal law preempted it, and entered partial summary judgment against Bowman's claim for failure to control vegetation on the railroad's right of way. In addition, the court denied Bowman's motion for summary judgment on his claim that NSR failed to sound statutorily required warning signals.
 
 
 5
 After a trial on the remaining issues, the jury returned a verdict in favor of NSR on all counts. Bowman then filed a Motion for New Trial and Sanctions for Attorney Misconduct based on NSR's failure to produce requested documents in a timely manner. The district court granted Bowman's motion for sanctions by refusing to award NSR costs but denied his request for a new trial. Bowman filed timely notice of appeal to this court. The district court had subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. Sec. 1332; we have jurisdiction under 28 U.S.C. Sec. 1291.
 
 II.
 
 6
 Bowman's primary argument on appeal is that the district court erred by failing to instruct the jury regarding S.C.Code Sec. 58-17-1440. That provision denies a railroad the defense of contributory negligence when it fails to give the warning signals required by South Carolina's General Railroad Law. Id. This statutory presumption of negligence can be overcome only if the injured party was grossly negligent or acted in violation of law. Id. Before closing argument, Bowman's counsel requested the court to instruct the jury on the substance of this statute. In response, the court noted that there were two conflicting decisions interpreting the statute, one by a federal district court and one by the United States Supreme Court. The provision had been declared unconstitutional by a federal district court in the 1979 case of Wessinger v. Southern Ry. Co., 470 F.Supp. 930 (D.S.C.1979). That decision, which was not appealed, held that Sec. 58-17-1440 violated the Equal Protection Clause of the United States Constitution, because it irrationally distinguished between railroads and the operators of trucks and cars. Id. at 932-33. In contrast, the Supreme Court had upheld the statute against a similar challenge in the 1933 case of Atlantic Coast Line R.R. Co. v. Ford, 287 U.S. 502, 509 (1933) ("The objection that because the presumption applies only to railway companies, its effect is to deprive appellants of the equal protection of the laws is clearly untenable."). After recognizing that Wessinger was not binding, the trial court stated: "I thought about it, but I'm just not--I'm not inclined to second guess[the judge in Wessinger ]. I'm going to stick with his decision and not charge the statute." Bowman's counsel then replied: "Okay." After the court completed its instruction to the jury, Bowman's counsel again made no objection to the court's failure to charge Sec. 58-17-1440. By not objecting at either opportunity, Bowman waived any right to complain on appeal of this alleged error.
 
 
 7
 In relevant part, Rule 51 of the Federal Rules of Civil Procedure states: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." We have recognized that the basis for the objection " 'must be stated with sufficient clarity that the trial judge may see what they are and follow them if well taken.' " Duty v. East Coast Tender Serv., Inc., 660 F.2d 933, 940 (4th Cir.1981) (quoting 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE Sec. 2554). However, "Rule 51 must be read in conjunction with Rule 46," City of Richmond v. Madison Management Group, Inc., 918 F.2d 438, 453 (4th Cir.1990), which states: "[I]t is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor." Fed.R.Civ.P. 46. Particularly "where 'the district court was fully aware of the plaintiff's position,' and the district court had obviously considered and rejected that position, strict enforcement of Rule 51 would 'exalt form over substance.' " Madison Management Group, Inc., 918 F.2d at 453.
 
 
 8
 "Even giving Rule 51 the more relaxed application that Rule 46 suggests," Bowman "can point to nothing more than the court's denial of a requested instruction." Id.; see also Deadwyler v. Volkswagen of Am., Inc., 884 F.2d 779, 782 (4th Cir.1989) (finding a failure to object where a party's intention for its proposed jury instruction to serve as an objection to the court's then tentative instructions "was not made clear" and the party made no objection at the charging conference). In such a situation, "a reading of Rule 51 loose enough to permit preservation of the point would effectively delete Rule 51 insofar as allegations of error in the failure to give an instruction are concerned." Id. Moreover, even if Bowman's initial request could in some way be characterized as an "objection," it was abandoned when counsel acquiesced in the judge's decision with an "okay" and absolutely no complaint. Cf. Havee v. Belk, 775 F.2d 1209, 1220 (4th Cir.1985) (finding "no basis for a claim of error in the failure of the district judge to give an instruction which the complaining party in effect thus abandoned" by stating "that's o.k.").
 
 
 9
 The "failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." Hafner v. Brown, 983 F.2d 570, 578 (4th Cir.1992); see also Havee, 775 F.2d at 1220 (noting that review is not foreclosed if "the alleged error ... is such that notice thereof is ' "necessary to correct a fundamental error or to prevent a miscarriage of justice" ' " (quoting Management Systems Assoc. v. McDonnell-Douglas Corp., 762 F.2d 1161, 1177 (4th Cir.1985)). Particularly in light of the substantial evidence that NSR actually complied with the statute at issue, such circumstances do not exist here.[1] Accordingly, because Bowman failed to preserve the issue, we do not address whether S.C.Code Sec. 58-17-1440 violates the Equal Protection Clause of the United States Constitution.[2]
 
 III.
 
 10
 Bowman also challenges the district court's grant of summary judgment against his claim that the railroad negligently was travelling at an excessive speed at the time of his son's accident. The evidence at trial indicated that the train was travelling between 45 and 50 miles per hour. The City of Rock Hill has established a speed limit of 25 miles per hour, and NSR's internal policy is to obey such local limits.[3] Federal regulations set the maximum permissible speed at 60 miles per hour for this class of track. See 49 C.F.R. Sec. 213.9.
 
 
 11
 We review the district court's grant of summary judgment de novo. Ramos v. Southern Md. Elec. Coop., 996 F.2d 52, 53 (4th Cir.1993). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir.1990). In making this determination, we view the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir.1991).
 
 
 12
 Despite Bowman's efforts to distinguish the facts of this case from those in CSX Transp., Inc. v. Easterwood, --- U.S. ----, 113 S.Ct. 1732 (1993), his common law excessive speed claim falls squarely within that Supreme Court decision. Easterwood dealt with a state law claim of excessive speed arising out of a railroad crossing accident. The Court held that federal regulations setting maximum speeds for all freight and passenger trains preempted a state law negligence claim based on excessive speed. Id. at 1742-44 ("[T]he federal speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation...."). The regulations at issue, codified at 49 C.F.R. Sec. 213.9(a), were promulgated by the Secretary of Transportation pursuant to the Federal Railroad Safety Act of 1970 ("FRSA"). See 45 U.S.C. Sec. 431(a) (giving the Secretary the power to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety"). In a footnote, the Court noted that "related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard" might not be preempted. Easterwood, 113 S.Ct. at 1743 n. 15. It declined, however, to address "the question of FRSA's pre-emptive effect on such claims." Id. As another potential limit, the Easterwood Court recognized that the FRSA's preemption provision, 45 U.S.C. Sec. 434, permits a state to " 'continue in force an additional or more stringent law ... relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard.' " Easterwood, 113 S.Ct. at 1743 (quoting 45 U.S.C. Sec. 434). The Court cautioned, however, that "[t]he state law [establishing a lower speed limit] on which respondent relies is concerned with local hazards only in the sense that its application turns on the facts of each case." Id.
 
 
 13
 Relying on both the language in Easterwood about "related common law duties" and the savings provision in Sec. 434, Bowman argues that vegetation obscuring the railroad crossing and the adjacent chemical plants created a local ultrahazardous condition negating any preemption. His argument fails on several grounds. First, there is no evidence that the state took any action to deal with a special danger that might have existed at this particular crossing, as required in Sec. 434. Second, there is little evidence that the circumstances on which Bowman relies contributed to his son's death. Photographs offered at trial demonstrate that the crossing was not obscured by trees, and the accident was unrelated to the potentially hazardous activities in which the chemical plants engaged. In sum, these conditions do not create a "local safety hazard" of the type contemplated in Sec. 434's savings provision or in Easterwood. As the Supreme Court specifically noted in that case, "[C.F.R.] Sec. 213.9(a) should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossing." Id. at 403. Here, there is no evidence that the train which collided with Bowman's truck was travelling in excess of 60 miles per hour, the maximum speed permitted under the applicable federal regulations. Based on the preemption of state law recognized in Easterwood, NSR is entitled to summary judgment on the excessive speed claim asserted by Bowman.
 
 IV.
 
 14
 Bowman contends that the district court erred by denying his motion for a new trial pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. That rule provides that a court may relieve a party from final judgment on the basis of "fraud ..., misrepresentation, or other misconduct of an adverse party." Fed.R.Civ.P. 60(b)(3). We review a trial court's decision to deny such a motion for abuse of discretion only. Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir.1994); Square Constr. Co. v. Washington Metropolitan Area Transit Authority, 657 F.2d 68, 71 (4th Cir.1981).
 
 
 15
 Bowman asserts that NSR withheld documents regarding previous accidents involving train engineer Whitaker, despite Bowman's discovery requests for such information. NSR counters that it produced information concerning the accidents about which it had knowledge, and that locating any other records would have taken a tremendous amount of time, as its accident files were not classified according to the name of the engineer involved. NSR also notes that Whitaker responded to questions about earlier accidents during his deposition. We have
 
 
 16
 set forth three factors that a party must establish in order to prevail on a Rule 60(b)(3) motion: (1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case. After proof of these elements,"the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case."
 
 
 17
 Schultz, 24 F.3d at 630 (quoting Square Constr. Co., 657 F.2d at 71). Before applying the foregoing standard to this case, we note that NSR's behavior was less than commendable. Citing the railroad's delinquency in producing documents regarding Whitaker's prior accidents, the trial judge properly sanctioned NSR by refusing to award it costs. We cannot say, however, that NSR's misconduct rose to such a level that the trial court abused its discretion by denying Bowman's motion.
 
 
 18
 First, at least some part of NSR's failure to respond completely was a consequence of its somewhat understandable confusion regarding whether Bowman's discovery request and the court's subsequent order to compel related to an interrogatory--with which NSR arguably complied--or the production of documents. Second, the accident reports actually produced by NSR were not examined fully by Bowman, thereby undermining their supposed significance. Most importantly, Bowman does not appear to have been deprived of a fair trial by the withholding of documents pertaining to Whitaker's accidents. The district court dismissed Bowman's claim of negligent entrustment prior to trial, and Bowman does not challenge that decision on appeal. After that claim was dismissed, Whitaker's accident record ceased to be relevant. The primary issues remaining concerned whether vegetation near the crossing posed a hazard and whether the train signalled in accordance with South Carolina law. We therefore conclude that the district court did not abuse its discretion by denying Bowman's motion for a new trial.
 
 V.
 
 19
 Finally, Bowman argues that the district court erred by admitting testimony from Kenneth Nichols, an official with the South Carolina Highway Department, who had conducted a routine safety inspection of the Robertson Road Crossing some sixty days before Bowman's accident. Nichols recorded his findings in a report that the trial court ruled inadmissible under 23 U.S.C. Sec. 409, which prohibits the admission of "reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings." Neither party now contends that the report itself should have been admitted. Bowman asserts, however, that testimony by the individual who prepared the report also violates Sec. 409. We review the trial court's evidentiary ruling on this point for an abuse of discretion. Persinger v. Norfolk & W. Ry. Co., 920 F.2d 1185, 1188 (4th Cir.1990).
 
 
 20
 In Harrison v. Burlington N. R.R. Co., 965 F.2d 155, 160 (7th Cir.1992), the Seventh Circuit held that an official could not testify regarding the contents of a similarly inadmissible document. As the Harrison court recognized, "allowing the witnesses to testify as to the content of the ... report would have circumvented the purposes of the statute," which it characterized as " 'facilitat[ing] candor in administrative evaluations of highway safety hazards.' " Id. (quoting Robertson v. Union Pac. R.R., 954 F.2d 1433, 1435 (8th Cir.1992)). In this case, however, Nichols simply used portions of the document to refresh his recollection about matters otherwise available to any lay witness who had observed the scene. Utilizing the document in that manner seems consistent with Rule 612 of the Federal Rules of Evidence, which allows a witness to use a writing to refresh his memory either before or during his testimony. Although witnesses should not be allowed to circumvent Sec. 409 by testifying regarding the contents of an inadmissible report, that does not appear to be the situation here.
 
 
 21
 Moreover, even if Nichols' testimony should have been excluded, any error was harmless, as the information imparted by Nichols either was admitted by Bowman or was cumulative. See Fed.R.Civ.P. 61. The questions prompting Nichols to refer to his inspection report concerned whether the crossbucks were in place, which Bowman conceded, and whether the crossing was obstructed, about which several other witnesses offered similar testimony. "[R]eversal is not warranted where evidence erroneously admitted is merely cumulative." Jackson v. Price, 342 S.E.2d 628, 630 (S.C.Ct.App.1986).
 
 VI.
 
 22
 For the foregoing reasons, the judgment of the district court is, in all respects,
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The safety statute at issue, S.C.Code Sec. 58-15-910, requires that a bell or whistle be sounded "five hundred yards from the place where the railroad crosses any public highway ... and be kept ringing or whistling until the engine ... has crossed [the] highway." Whitaker testified that he rang the bell all the way from Columbia, and the train's brake operator stated that the whistle continued to sound until the engine crossed the highway. Contrary to Bowman's assertion, nothing in South Carolina requires that a whistle, or a whistle and a bell, make one uninterrupted sound. Evidence that the bell rang throughout the train's journey and that the whistle blasted in sequence until after the accident more than created a jury question regarding NSR's compliance with the signalling statute
 
 
 [2]
 Nor do we address Bowman's related argument that the district court erred by denying summary judgment on his failure to signal claim based on "undisputed" evidence that the NSR engineer did not signal as required under South Carolina law. Under this court's recent decision in Chesapeake Paper Products Co. v. Stone Webster Engineering Corp., 51 F.3d 1229, 1237 (4th Cir.1995), a denial of summary judgment is not subject to appellate review after a trial on the merits. Because Bowman did not move for judgment as a matter of law on this issue, a sufficiency of the evidence claim is not properly before us
 
 
 [3]
 The parties now dispute whether the Robertson Road crossing is located within the municipal boundaries. Regardless, our holding that local law is preempted renders this issue irrelevant